**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x

| | |
|---|---|
| In re | : |
| | :    **Chapter 11** |
| **FAIRWAY GROUP HOLDINGS CORP.,** *et al.,* | : |
| | :    **Case No. 20-10161 (JLG)** |
| | :    **(Jointly Administered)** |
|       **Debtors** | : |

-------------------------------------------------------------------x

| | |
|---|---|
| | : |
| **VILLAGE SUPER MARKET, INC.,** | : |
| **WAKEFERN FOOD CORP.,** | : |
| **VSM NY HOLDINGS LLC, AND** | : |
| **VSM NY DISTRIBUTION LLC,** | : |
| | : |
|       **Plaintiffs,** | : |
|     **-against-** | :    **Adv. Proc. No. _____** |
| | : |
| | : |
| **FAIRWAY BROADWAY LLC,** | : |
| **FAIRWAY BAKERY LLC,** | : |
| **FAIRWAY DOUGLASTON LLC,** | : |
| **FAIRWAY CHELSEA LLC,** | : |
| **FAIRWAY EAST 86TH STREET LLC,** | : |
| **FAIRWAY GROUP HOLDINGS CORP.,** | : |
| **FAIRWAY GROUP ACQUISITION CO.,** | : |
| **FAIRWAY GROUP CENTRAL SERVICES LLC,** | : |
| **FAIRWAY KIPS BAY LLC,** | : |
| **FAIRWAY PELHAM LLC,** | : |
| **FAIRWAY PELHAM WINES & SPIRITS LLC,** | : |
| **FAIRWAY REDHOOK LLC,** | : |
| **FAIRWAY STAMFORD LLC,** | : |
| **FAIRWAY UPTOWN LLC, AND** | : |
| **FAIRWAY WESTBURY LLC,** | : |
| | : |
|       **Defendants.** | : |
| | : |

-------------------------------------------------------------------x

## ADVERSARY PROCEEDING COMPLAINT FOR BREACH OF CONTRACT, FRAUDULENT MISREPRESENTATION, INFRINGEMENT OF INTELLECTUAL PROPERTY AND UNFAIR COMPETITION

Plaintiffs, by and through their attorneys, for their Complaint against Defendants, allege with knowledge as to themselves and on information and belief as to all other matters, as follows:

## I.  NATURE AND SUMMARY OF THE ACTION

1.      This adversary proceeding arises from Debtors' (together, "Defendants") breach of the Asset Purchase Agreement (the "APA") entered into in connection with Sellers' (as defined in the APA) sale of certain assets (the "Acquired Assets") to VSM NY Holdings LLC ("VSM Holdings") and VSM NY Distribution LLC ("VSM Distribution" and together with VSM Holdings, "VSM"), Sellers' fraudulent misrepresentations in connection with the APA, and Defendants' infringement of Plaintiffs' FAIRWAY trademark.

2.      The APA was the product of an auction by the Debtors of their assets and was approved by the Court after a contested hearing by Order entered April 20, 2020 (the "Sale Order"). In exchange for payment of the $76 million purchase price, Sellers agreed to convey to VSM the Acquired Assets, including five supermarkets, leasehold interests in a parking lot and a production distribution center, associated equipment, and the intellectual property of Fairway, including the marks and names "Fairway" and "Fairway Markets." The portion of the purchase price under the APA allocated to the Fairway intellectual property was $3 million. At Sellers' request, VSM agreed to a limited license provision in the APA (the "License") whereby Defendants could continue using the trademarks and tradenames of Fairway ("Marks" or "Seller Marks") for a limited time on a royalty free basis, but only in the same manner as such Marks were used prior to the closing of the transaction under the APA (the "Closing"), ostensibly for purposes of facilitating the liquidation of the stores that the Debtors were unable to sell. The License commenced on the date of acquisition of the Seller Marks by VSM, May 8, 2020. During the phase-out period, Sellers are obligated to "use reasonable diligent efforts to minimize and eliminate use" of the Seller Marks,

and all use of the Marks should be terminated "as soon as reasonably practicable after the Closing Date," which in any event cannot exceed 120 days.

3.     VSM Holdings and VSM Distribution are wholly owned by Village Super Market, Inc. ("Village"), a member of Wakefern Food Corp. ("Wakefern") the largest retailer owned food cooperative in the country. Wakefern provides its members with product, various services, and owns and licenses to its members the trademarks and tradenames under which its members operate their businesses, including "ShopRite" and other valuable marks. Pursuant to an agreement between them, VSM assigned certain of the Seller Marks to Wakefern following the Closing. Following the assignment, Wakefern issued a license back to VSM to use those same marks.

4.     In direct violation of the APA License, Defendants have developed and are currently promoting the new brand name FRESH AND BEYOND SPECIALTY GROCER in tandem with the FAIRWAY mark and name. The FRESH AND BEYOND SPECIALTY GROCER brand name appears on new supermarket signage, product signage, in advertising circulars for Defendants' supermarkets and online at the www.freshandbeyondspecialtyfoods.com website. In all these materials, the new brand name appears close to, and in some cases, joined together with or links to, the FAIRWAY mark and name. Moreover, on June 3, 2020, Defendants applied in the name of Fairway Group Acquisition Company to register the FRESH AND BEYOND SPECIALTY GROCER mark in the United States Patent and Trademark Office (PTO) for "grocery store services," Application Ser. No. 88/946,096. The FRESH AND BEYOND SPECIALTY GROCER brand name did not exist previously and its use together with the Seller Marks constitutes a breach of the License requirement that the Seller Marks only be used in the same manner in which they were used prior to the Closing. The manner of use by Defendants evidences a further breach of Defendants' obligations to cease use of the Seller Marks as soon as

reasonably practicable. Such unauthorized use constitutes trademark infringement, creates irreparable harm to the Seller Marks, and severely and adversely impacts the value VSM paid for, including, but not limited to, the goodwill associated with the FAIRWAY marks.

5.      In addition, and in violation of the terms of the APA, Sellers have failed to convey all Intellectual Property as defined in the Agreement, including in particular all computer software (including shopping-related apps), as Sellers continue to use the "Fairway Mobile Checkout" app. Sellers also are continuing to refuse to provide VSM with the information that Sellers historically used to notify customers at the acquired stores of special promotions and other information. Sellers have historically notified customers by texts or emails to their email addresses and/or telephone numbers, and such telephone numbers constitute part of the Acquired Assets. Customers, and the ability to retain customer loyalty, are crucial for a supermarket and unquestionably related to the operation of the business. VSM acquired all assets necessary for the operation of the stores it acquired, including customer data. Nevertheless, Sellers are now refusing to provide this data to VSM to allow it to continue to operate the business at the acquired stores.

6.      Separate from their breaches of the APA, Sellers fraudulently failed to disclose and thereby misrepresented the value of the acquired assets. Specifically, Sellers knew of a federal lawsuit alleging violations of the Americans with Disabilities Act, which was pending prior to execution of the APA, seeking a permanent injunction closing one of the acquired stores, but did not disclose this material fact in the APA or otherwise. The lawsuit was filed in August of 2018, more than a year and a half before the execution of the APA. VSM Holdings has now been added to that litigation as a defendant and has and will suffer significant damages because of Sellers' fraudulent misrepresentation.

**II.    PARTIES**

    **A.    Plaintiffs**

7.    Plaintiff Village Super Market, Inc. ("Village"), is a New Jersey corporation that owns and operates supermarkets. Village entered into the APA with the Sellers named in the APA on March 25, 2020. Village assigned its rights under the APA to VSM (as to the production distribution center (the "PDC") only) in connection with the Closing under the APA, and VSM acquired the assets sold and assumed the liabilities required to be assumed under the APA. Village guaranteed the obligations of VSM to the landlords of the Assumed Leases, as defined in the APA, at the Closing.

8.    Plaintiff Wakefern Food Corp. ("Wakefern") is a New Jersey private corporation and is the largest retailer-owned cooperative in the United States.

9.    Plaintiff VSM NY Holdings LLC ("VSM Holdings") is a New York limited liability company and a wholly owned subsidiary of Village. Pursuant to that certain Assignment and Assumption Agreement dated April 7, 2020, Village assigned to VSM, and VSM assumed from Village, all of Village's right, title and interest in and to the APA.

10.    Plaintiff VSM NY Distribution LLC ("VSM Distribution" and together with VSM Holdings, "VSM") is a New York limited liability company and a wholly owned subsidiary of Village. Pursuant to that certain Assignment and Assumption Agreement dated April 16, 2020, VSM Holdings assigned to VSM Distribution, and VSM Distribution assumed from VSM Holdings, all of VSM Holding's right, title and interest under the APA to purchase the assets and liabilities relating to the PDC.

    **B.    Defendants**

11.    Defendant Fairway Group Holdings Corp. ("Fairway") is a Delaware corporation. Fairway, through its subsidiaries, retails food products such as bakery, meat, cheese, coffee, deli,

produce, seafood, wines and spirits, and groceries. On January 23, 2020, Fairway, along with its direct or indirect wholly-owned subsidiaries filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code.

12. Defendant Fairway Group Acquisition Co. ("Fairway Group Acquisition") is a Delaware corporation. Fairway Group Acquisition, through its subsidiaries, retails food products such as bakery, meat, cheese, coffee, deli, produce, seafood, wines and spirits, and groceries.

13. Defendant Fairway Broadway LLC ("Fairway Broadway") is a Delaware limited liability company. Fairway Broadway operates a supermarket located at 2121-2127 and 2131 Broadway, New York, New York 10023.

14. Defendant Fairway East 86th Street LLC ("Fairway E 86th") is a Delaware limited liability company. Fairway East 86th operates a supermarket located at 230-240 East 86th Street, New York, New York 10028.

15. Defendant Fairway Kips Bay LLC ("Fairway Kips Bay") is a Delaware limited liability company. Fairway Kips Bay operates a supermarket located at 542-580 Second Avenue, New York, New York 10016.

16. Defendant Fairway Uptown LLC ("Fairway Uptown") is a Delaware limited liability company. Fairway Uptown operates a parking lot at 2288-2312 12th Avenue, New York, New York 10027.

17. Defendant Fairway Chelsea LLC ("Fairway Chelsea") is a Delaware limited liability company. Fairway Chelsea operates a supermarket located at 55 West 25th Street, New York, New York 10010.

18.     Defendant Fairway Bakery LLC ("Fairway Bakery") is a Delaware limited liability company. Fairway Bakery operates a production distribution center located at 400 Walnut Avenue, Bronx, New York 10454.

19.     Defendant Fairway Pelham LLC ("Fairway Pelham") is a Delaware limited liability company. Fairway Pelham operates a supermarket located at Post Road Plaza, 847 Pelham Parkway, Pelham, New York 10803.

20.     Defendant Fairway Pelham Wines & Spirits LLC ("Fairway Pelham W&S") is a Delaware limited liability company. Fairway Pelham W&S operates a liquor store located at Post Road Plaza, 847 Pelham Parkway, Pelham, New York 10803.

21.     Defendant Fairway Group Central Services LLC ("Fairway Central Services") is a Delaware limited liability company. Fairway Central Services processes payments for Fairway's ordinary course goods and services.

22.     Defendant Fairway Douglaston LLC ("Fairway Douglaston") is a Delaware limited liability company. Fairway Douglaston operates a supermarket located at 242-02 61st Avenue Douglaston, NY 11362.

23.     Defendant Fairway RedHook LLC ("Fairway RedHook") is a Delaware limited liability company. Fairway RedHook operates a supermarket located at 480 Van Brunt Street Brooklyn, NY 11231.

24.     Defendant Fairway Stamford LLC ("Fairway Stamford") is a Delaware limited liability company. Fairway Stamford operates a supermarket located at 699 Canal Street Stamford, CT 06902.

25.     Defendant Fairway Westbury LLC ("Fairway Westbury") is a Delaware limited liability company. Fairway Westbury operates a supermarket located at 1258 Corporate Drive Westbury, NY, 11590.

26.     Defendants named herein who are parties to the APA are collectively referred to as "Sellers." The balance of Defendants used the trademarks and tradenames acquired under the APA in breach thereof.

27.     Sellers entered into the APA with Village dated March 25, 2020, which was approved by the Sale Order.

## III.    JURISDICTION AND VENUE

28.     This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 157 and 1334(b).

29.     Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a). Parties to the APA agreed that the Court would retain jurisdiction to enforce the APA. This Court has pendent jurisdiction of claims that do not arise directly under the APA.

## IV.    FACTUAL BACKGROUND

30.     On January 22, 2020, Sellers and Village entered into an Asset Purchase Agreement whereby Village agreed to purchase from Sellers, and Sellers agreed to sell, transfer, assign, convey, and deliver to Village, all of the Acquired Assets (defined therein) free and clear of liens or claims ("January 22, 2020 Asset Purchase Agreement").

31.     On January 23, 2020, the Debtors (including Sellers) filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code and a motion of Sellers for entry of orders: (i)(a) approving bidding procedures for sales of Sellers' assets, (b) approving stalking horse bid protections, (c) authorizing designation of additional stalking horse bidders, (d) scheduling auctions for and hearings to approve sales of Sellers' assets, (e) approving form and

manner of notice of sales, auctions, and sale hearings, (f) approving assumption and assignment procedures and form and manner of notice of assumption and assignment, and (g) granting related relief; and (ii)(a) authorizing sale of Sellers' assets free and clear of liens, claims, interests, and encumbrances, (b) authorizing assumption and assignment of executory contracts and unexpired leases, and (c) granting related relief (ECF No. 21), which motion identified Village as a stalking horse bid.

32.     After an auction that took several days to complete, on March 25, 2020, Sellers and Village entered into the APA which superseded the January 22, 2020 Asset Purchase Agreement. On April 9, 2020, Sellers and Village finalized the disclosure schedules to the APA.

33.     On April 7, 2020, Village and VSM Holdings entered into that certain Assignment and Assumption Agreement whereby Village assigned to VSM Holdings, and VSM Holdings assumed from Village, all of Village's right, title and interest in and to the APA.

34.     On April 16, 2020, VSM Holdings and VSM Distribution entered into that certain Assignment and Assumption Agreement whereby VSM Holdings assigned to VSM Distribution, and VSM Distribution assumed from VSM Holdings, all of VSM Holding's right, title, and interest under the APA to purchase and assume the assets and liabilities relating to the PDC.

35.     By order dated April 20, 2020, the Court approved the sale of the Acquired Assets pursuant to the APA.

36.     On June 25, 2020, pursuant to an assignment between the companies, VSM conveyed to Wakefern all right, title and interest in and to the Seller Marks. Also on June 25, 2020, Wakefern and VSM executed a license back to VSM permitting VSM to use the Seller Marks subject to the license terms.

## V.  THE ASSET PURCHASE AGREEMENT

37.     The APA was entered into as of March 25, 2020, and amended as of May 6, 2020, by and among Sellers and VSM.

38.     Pursuant to the APA, the Acquired Assets included all of the assets of the Sellers used or useful in the operation of the Stores and the PDC, including the leasehold interests in five operating supermarkets (the "Stores") and the Business, as defined in the APA, inventory, store cash, prepaid expenses, furnishing and equipment, a parking lot ("Harlem Lot"), the PDC and the intellectual property of Fairway, including the names "Fairway" and "Fairway Markets", and the books and records exclusively used in conjunction with the operation of the Business. Four of the supermarkets are in Manhattan, specifically the Upper West Side, Upper East Side, Kips Bay and Chelsea locations, and a fifth store located in Pelham, NY. VSM agreed to pay $76.2 million for the Fairway assets, subject to certain closing adjustments, and to assume certain liabilities, consisting primarily of those arising from acquired leases.

39.     The APA defines "Acquired Assets" as including, among others, all inventory related to the operation of the Stores, the Harlem Lot and the PDC, all books and records exclusively related to the operation of the Stores, the Harlem Lot and the PDC, including records relating to payroll, sales, and expenses, the plans, specifications, keys, passwords, and combinations for the Stores, Harlem Lot and PDC.

40.     As part of the Acquired Assets (as defined in the APA), VSM purchased from Sellers and Sellers sold to VSM "all books and records of [Sellers] exclusively related to operation of the Business (as defined in the APA)." This includes all customer data other than any customer data and information derived from branded loyalty promotion or co-branded credit card programs and other similar information related to customer purchases at the Stores (as defined in the APA). Fairway did not operate any branded loyalty promotion or co-branded credit card program related

to customer purchases at the Stores. Accordingly, Plaintiffs were entitled to all customer data and information, including data and information used to communicate with customers of the Stores.

41.     Acquired Assets also include "any Intellectual Property owned by Sellers, including, for the avoidance of doubt, the name 'Fairway' or 'Fairway Markets' or any derivatives thereof, and all other marks set forth on Section 1.1 of the Disclosure Schedule under the heading 'Marks', any name or trademark, service mark, trade name, logo, trade dress, Internet domain name or other indicia of origin that includes, relates to or derives from any such name, or any related abbreviations, acronyms or other formatives based on any such name, whether alone or in combination with any other words, phrases, or designs, and all registrations, applications and renewals thereof, all rights and goodwill associated therewith and any name or trademark, service mark, trade name, logo, Internet domain name, or other indicia of origin that is confusingly similar thereto or derived therefrom (collectively, the 'Seller Marks')". The term "Intellectual Property" is further defined in Section 1.1 to include, *inter alia* (and in addition to the Seller Marks), "all computer software (including data and databases)" as well as "technology, improvements, and inventions." "Acquired Assets" also includes "all books and records of Sellers exclusively related to operation of the Business," as defined therein.

42.     Sellers also committed to provide "Further Assurances" to carry out the purpose of the APA. Specifically, Section 6.1 states that "if further action is necessary to carry out the purposes of the [APA], each of the Parties will, at the requesting Party's sole cost and expense, take such further action (including the execution and delivery of such other reasonable instruments of sale, transfer, conveyance, assignment, assumption and confirmation, providing materials and information) as the other Party may reasonably request which actions shall be reasonably necessary

to transfer, convey or assign to [VSM] all of the Acquired Assets or to confirm [VSM's] assumption of the Assumed Liabilities."

43.     To facilitate Debtors' attempt to dispose of their remaining assets, VSM granted Defendants (and their defined "Authorized Users") a limited, non-exclusive right to continue to use the Seller Marks. Section 6.8 of the APA grants a limited license for the Authorized Users to continue to use the Seller Marks with respect to any supermarket location which is not an Acquired Asset or corporate headquarters. Under Section 6.8 of the APA, the Authorized Users' right to continue to use the Seller Marks is limited and can be used only strictly in accordance with Section 6.8. Such authorized use is expressly limited to use in substantially the same manner as such Authorized User used the Seller Marks before the Closing of the APA, effectively prohibiting use of new brands or slogans in connection with the Seller Marks.

44.     Further, Section 6.8 of the APA requires Sellers to use reasonable diligent efforts to minimize and eliminate the use of the Seller Marks by the Authorized Users, and to discontinue all use "as soon as reasonably practicable" but in any event no later than one hundred and twenty (120) days after the Closing.

45.     In connection with the sale of the Acquired Assets, Sellers provided representations and warranties to VSM contained in the APA, and certain disclosures as set forth in the "Disclosure Schedule" accompanying the APA. As part of their disclosures, Sellers represented that "there is no [proceeding] pending for which [Sellers] have received notice that (a) would reasonably be expected to have a Material Adverse Effect." Material Adverse Effect is defined as "any effect or change that has a material adverse effect on the condition of the Acquired Assets or the Business, taken as a whole."

## VI. SELLERS' BREACH OF THE LICENSE PROVISIONS OF THE ASSET PURCHASE AGREEMENT

46.     Sometime after the Closing but on or before July 2, 2020, Defendants commenced use of the FRESH AND BEYOND SPECIALTY GROCER name and mark in Defendants' Westbury, NY store (the "Westbury Store") located at 1258 Corporate Drive, Westbury, NY, 11590. As shown below, the "FRESH AND BEYOND SPECIALTY GROCER" mark was, among other places, prominently advertised on a banner immediately beneath the main FAIRWAY store marquee, with the text "*Introducing* FRESH & BEYOND SELECTIONS" appearing in the center of the banner, as shown below.



47.     Sometime after the Closing but on or before June 24, 2020, Defendants commenced use of the FRESH AND BEYOND SPECIALTY GROCER name and mark in Defendants' Red Hook Store (the "Red Hook Store") located at 480-500 Van Brunt St, Brooklyn, NY 11231. As shown below, the "FRESH AND BEYOND SPECIALTY GROCER" mark was, among other places, prominently advertised on a banner immediately adjacent to the main FAIRWAY exterior

store signage, with the text "*Introducing* FRESH & BEYOND SELECTIONS" appearing in the center of the banner. The FRESH AND BEYOND SPECIALTY GROCER name and mark is larger and more prominent than the FAIRWAY Logo, as shown below.



48.     Defendants' website, www.freshandbeyondspecialtyfoods.com, also continues to advertise the Westbury Store with a link to a picture of the Westbury Store prominently displaying the Fairway Mark. The same is true with regard to the Red Hook Store, and the stores in Douglaston and Stamford:  for each, a user need only click the "Learn More" button on the website for each of these stores, and the website resolves to an image of the store bearing the Fairway Mark in its exterior signage.

49.     Sometime after Closing but before July 2, 2020, Defendants commenced use of the FRESH AND BEYOND SPECIALTY GROCER name and mark on Defendants' website www.freshandbeyondspecialtyfoods.com. As shown below, the FRESH AND BEYOND SPECIALTY GROCER mark is, among other places, displayed in online advertising circulars for Defendants' stores. The FRESH AND BEYOND SPECIALTY GROCER logo headlines the items appearing immediately beneath the FAIRWAY Logo, and is larger and more prominent on the

page than the FAIRWAY Logo. Users can access the circulars by clicking on buttons for either "Stamford Deals" or "All Other Locations."



50.    Defendants' website, www.freshandbeyondspecialtyfoods.com, also provides a link to an "App" and a sign-up field for a "VIP Club," as shown here:



However, subscribing to the "VIP Club" results, on information and belief, to subscriptions to both "Fairway Market" and "Fresh and Beyond Specialty Foods." In addition, clicking on the "Get Our App" button resolves to a Fairway branded mobile application, the "Fairway Mobile Checkout," on an Apple website. Village's Chelsea, Kips Bay, Broadway, 86th Street, and Pelham store locations appear in the app's home screen for selection by customers, comingled with the Red Hook, Douglaston, Westbury, and Stamford stores still owned by Defendants.



51. Sometime after Closing but before July 2, 2020, Defendants commenced use of the FRESH AND BEYOND SPECIALTY GROCER name and mark on products at certain of Defendants' stores. As shown below, the FRESH AND BEYOND SPECIALTY GROCER mark appears, among other places, on packaging for private-label mozzarella cheese. The accompanying sign on the display bears the FAIRWAY Logo and identifies the cheese as a FAIRWAY-branded product.



52.     Defendants' simultaneous use of the FAIRWAY and FRESH AND BEYOND SPECIALTY GROCER marks has already created substantial marketplace confusion. Customers encountering both marks are likely to mistakenly believe that FRESH AND BEYOND SPECIALTY GROCER is a new supermarket brand owned by, and/or use of which is controlled by, the owner of the FAIRWAY mark and name. Customers are also likely to mistakenly expect to see use of the FRESH AND BEYOND SPECIALTY GROCER brand at Plaintiffs' supermarket locations in the future. Plaintiffs' concern surrounding this false expectation is exacerbated by Defendants' repeated use of the misleading "*Introducing* FRESH AND BEYOND SPECIALTY GROCER" language on Defendants' advertising materials. Customers are likely to associate the quality of the FRESH AND BEYOND SPECIALTY GROCER brand with Plaintiffs, even though Plaintiffs do not own that brand and have no ability to control the quality of products sold or services offered under it. Shown below without limitation is one example of public confusion already caused by Defendants' actions at the Red Hook Store.





**PortSide NewYork**
@PortSideNewYork

Alert to #RedHook #Brooklyn about @FairwayMarket rebranding.

@greg_ocorg the community is eager for an update. There's a big discussion underway on RH FB group Curb etc.

> **Jeremy Lechtzin** @jeremylechtzin · Jun 27
> Fairway Red Hook looks like it's rebranding as Fresh and Beyond Specialty Grocer - NOT closing in liquidation. They registered the trademark 3 wks ago and new banner accidentally revealed in today's storm. News @PortSideNewYork @kduggan16 ?
> Show this thread

12:17 PM · Jun 28, 2020 · Twitter Web App

**2** Retweets   **1** Like

53.     Defendants' supermarket locations are geographically proximate to VSM's supermarket locations. By way of example only, Defendants' Red Hook store is under 10 miles from VSM's Broadway store, under 11 miles from VSM's 86th Street store, under 7 miles from VSM's Chelsea store, under 9 miles from VSM's Kips Bay store, and under 25 miles from VSM's Pelham store. Customers of VSM's supermarkets likely visit Defendants' supermarkets and vice-versa.

54. Defendants' use of the Seller Marks in conjunction with the new FRESH AND BEYOND SPECIALTY GROCER brand name is not in substantially the same manner as used before the Closing, in direct contravention of the APA. In fact, Defendants' simultaneous use of the FRESH AND BEYOND SPECIALTY GROCER and FAIRWAY brands is *antithetical* to the purpose of the License, which was to allow temporary holdover use of the FAIRWAY name while liquidating the stores the Debtors were unable to sell. Defendants no longer appear to be liquidating the unsold stores, and instead are leveraging the goodwill associated with the FAIRWAY name and mark – an intellectual property asset for which VSM paid millions – to effortlessly divert consumer attention and goodwill to Defendants' new brand. Such use confuses consumers and diminishes the value of the FAIRWAY name and mark.

55. Defendants' intent to trade on the goodwill associated with the Seller Marks is underscored by the fact that upon launch of the FRESH AND BEYOND SPECIALTY GROCER brand, use of the FAIRWAY brand by Defendants was no longer necessary. Defendants easily could have removed or covered existing exterior signage or interior décor bearing the FAIRWAY brand, or omitted the FAIRWAY brand from Defendants' online supermarket circulars and website, but instead opted to retain the FAIRWAY branding and add the new branding alongside it.

56. Defendants' simultaneous use of the FAIRWAY and FRESH AND BEYOND SPECIALTY GROCER branding is a breach of Defendants' obligation to use Seller Marks "in substantially the same manner" as prior to the Closing, as set forth in Section 6.8 of the APA.

57. Defendants' decision not to eliminate use of the FAIRWAY mark upon adoption of the FRESH AND BEYOND SPECIALTY GROCER mark is a breach of Defendants' obligation

to "use reasonably diligent efforts to minimize and eliminate use of the Seller Marks" by Defendants "as soon as reasonably practicable," as set forth in Section 6.8 of the APA.

## VII. SELLERS' OTHER BREACHES OF THE ASSET PURCHASE AGREEMENT

58.　Sellers also failed and refused to comply with other contractual obligations, including their obligation to convey all Acquired Assets, as well as their "further assurances" requirements under the APA, by (a) failing to convey, at minimum, all mobile applications including, without limitation, the "Fairway Mobile Checkout" app, (b) failing to convey all books and records pertaining to the Business, including in particular those relating to the Seller Marks, and (c) failing to convey customer data, and to direct the third party they employ to text and email customers to send opt in texts or emails to customers whose data was collected without full compliance with the privacy laws.

59.　Section 1.1 of the APA defines "Acquired Assets" to include "Intellectual Property", which is in turned defined to include, *inter alia* (and in addition to the Seller Marks), "all computer software (including data and databases)" as well as "technology, improvements, and inventions." This includes the mobile application known as the "Fairway Mobile Checkout" but Sellers have failed to convey this app as required under the APA.

60.　Section 1.1 of the APA defines "Acquired Assets" to include "all books and records of Sellers exclusively related to operation of the Business."

61.　This includes all customer data other than any customer data and information derived from branded loyalty promotion or co-branded credit card programs and other similar information related to customer purchases at the Stores. VSM has repeatedly requested customer data relating to the Acquired Assets. Sellers have refused to cooperate and refused to provide all books and records related to operation of the acquired stores. Sellers' refusal to provide the

information is a breach of the APA and a breach of the further assurances in Section 6.1 of the Purchase Agreement.

62.     Federal or state statutes or laws do not prohibit the transfer of this information. VSM requested that Sellers send an opt-in text to customers whose contact information is available in Sellers' database so that such customer data can be transferred to VSM. Such opt-in texts are permitted, especially under these circumstances where VSM is in the same business as Sellers and has acquired the assets and business of Sellers. Sellers have refused to cooperate or take any steps to transfer the required data, in breach of the APA.

63.     Sellers' continued refusal to provide the requested customer data, which VSM acquired as part of the overall purchase price for the Acquired Assets, violates the APA and the requirement of Section 6.1 to provide further assurances to carry out the purposes of the APA.

64.     The "books and records of Sellers" acquired under the APA also include all intellectual property maintenance and enforcement files, including all files associated with the Seller Marks and copyrights. Sellers have refused to provide these files.

## VIII.   SELLERS' FRAUDULENT MISREPRESENTATION

65.     Under Section 3.5 of the APA, Sellers represented that "there is no [proceeding] pending for which [Sellers] have received notice that (a) would reasonably be expected to have a Material Adverse Effect." "Material Adverse Effect" is defined as "any effect or change that has a material adverse effect on the condition of the Acquired Assets or the Business, taken as a whole."

66.     In Section 3.5 of the Disclosure Schedules, Sellers represent there are "None." This was false and misleading.

67.     On August 17, 2018 plaintiff Julie Maury filed a lawsuit (1:18-cv-07496-RWL) in the Southern District of New York against Ventura In Manhattan Inc. and Fairway East 86th Street LLC alleging violation of Title III of the Americans with Disabilities Act U.S.C., §§ 12181 et. seq. and its implementing regulations, the New York State Executive Law, § 296, New York State Civil Rights Law, § 40, and the Administrative Code of the City New York, § 8-107. The lawsuit seeks remedies including, "a permanent injunction ordering defendants to close and cease all business until defendants remove all violations" (Case No. 1:18-cv-07496-RWL, ECF No. 1 pg. 22).

68.     On June 11, 2020, a second amended complaint (Case No. 1:18-cv-07496-RWL, ECF No. 67) was filed to add VSM Holdings as a defendant seeking remedies including, injunctive relief to "order defendants to alter and modify their place of public accommodation and their operations, policies, practices and procedures." (Case No. 1:18-cv-07496-RWL, ECF No. 67 pg. 19).

69.     A lawsuit alleging violations of the Americans with Disabilities Act and seeking an injunction to close the Store is a proceeding having a material adverse impact on the value of the Store.

70.     Sellers knew of the lawsuit prior to the execution of the APA and the Disclosure Schedules incorporated therein. The lawsuit had been pending and ongoing for more than a year. Sellers retained counsel to defend them in the lawsuit.

71.     VSM reasonably relied on Sellers' representation that there were no proceedings having a material adverse effect on the condition of the Acquired Assets. Had VSM been aware of such proceedings, it would have acted accordingly and sought a reduction in the assigned purchase price for that Store or some other protection against the liability it was acquiring.

## IX. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (BREACH OF CONTRACT – LICENSE AGREEMENT)

72.     Plaintiffs reallege each and every allegation set forth in the Paragraphs above as if fully set forth herein.

73.     The APA represents a valid, enforceable agreement that binds Sellers.

74.     Plaintiffs performed all of their applicable obligations pursuant to the APA.

75.     Sellers breached and continue to breach the APA through their use of the Seller Marks in conjunction with the new name and mark FRESH AND BEYOND SPECIALTY GROCER. This usage is not substantially in the same manner as used before Closing, as detailed herein.

76.     Sellers breached and continue to breach the APA through their decision not to reduce or eliminate use of the Seller Marks upon launch of the FRESH AND BEYOND SPECIALTY GROCER brand. This violates the requirement to "use reasonably diligent efforts to minimize and eliminate use of the Seller Marks" by Defendants "as soon as reasonably practicable," as detailed herein.

77.     Sellers' breaches of the APA are without justification and have caused Plaintiffs substantial loss.

78.     As a result of these breaches, Plaintiffs have been damaged and are entitled to equitable and legal relief under the APA and at law, in an amount to be determined.

### SECOND CAUSE OF ACTION
### (BREACH OF CONTRACT – FURTHER ASSURANCES)

79.     Plaintiffs reallege each and every allegation set forth in the Paragraphs above as if fully set forth herein.

80.     The APA represents a valid, enforceable agreement that binds Sellers.

81.     Plaintiffs performed all of their applicable obligations pursuant to the APA.

82.     Sellers were obligated under the APA to provide the requested customer data, all Intellectual Property including mobile applications, and files relating to Sellers' intellectual property, all of which VSM acquired as part of the overall purchase price for the Acquired Assets. These obligations flow from the conveyance provisions of the APA as well as the further assurances provisions.

83.     VSM has repeatedly requested customer data relating to the Acquired Assets. Sellers have refused to cooperate. Sellers also refused, despite receipt of demand, to convey Sellers' mobile application, including the Fairway Mobile Checkout app, or intellectual property files, including files in respect of the Seller Marks and copyrights.

84.     Sellers' breach of the APA is without justification and has caused Plaintiffs substantial loss.

85.     As a result of these breaches, Plaintiffs have been damaged and are entitled to equitable and legal relief under the APA and at law, in an amount to be determined.

### THIRD CAUSE OF ACTION
### (INTENTIONAL INTERFERENCE WITH CONTRACT)
**(Against Defendants Fairway Douglaston LLC, Fairway RedHook LLC, Fairway Stamford LLC, and Fairway Westbury LLC)**

86.     Plaintiffs reallege each and every allegation set forth in the Paragraphs above as if fully set forth herein.

87.     The elements of a cause of action for intentional interference with contract are: (a) the existence of a valid contract with a third party; (b) knowledge of the contract; (c) intentional procuring of a breach of the contract; and (d) damages.

88.     The APA represents a valid, enforceable agreement that binds Sellers.

89.     Plaintiffs performed all of their applicable obligations pursuant to the APA.

90. Defendants named in this Count were aware of the APA and that it was a valid, binding contract between and among Sellers and Plaintiffs. The Defendants named in this Count knowingly procured a breach and continuing breach of the APA through their use of the Seller Marks in conjunction with the new name and mark FRESH AND BEYOND SPECIALTY GROCER. This usage is not substantially in the same manner as used before Closing, as detailed herein.

91. Defendants named in this Count intentionally procured the breach and continuing breach of the APA through their decision not to reduce or eliminate use of the Seller Marks upon launch of the FRESH AND BEYOND SPECIALTY GROCER brand. This violates the requirement under the APA for the Sellers to "use reasonably diligent efforts to minimize and eliminate use of the Seller Marks" "as soon as reasonably practicable," as detailed herein.

92. The procurement of the breaches of the APA by the Defendants named in this Count are without justification and have caused Plaintiffs substantial loss.

93. As a result of these breaches, the Defendants named in this Count are liable for all amounts resulting from such intentional interference with the contract, in an amount to be determined.

## FOURTH CAUSE OF ACTION
### (FRAUDULENT MISREPRESENTATION)

94. Plaintiffs Village and VSM reallege each and every allegation set forth in the Paragraphs above as if fully set forth herein.

95. The elements of a cause of action for fraudulent misrepresentation are: (a) material misrepresentation of a fact; (b) knowledge of its falsity; (c) intent to induce reliance; (d) justifiable reliance by plaintiff; and (e) damages.

96. Sellers misrepresented in Section 3.5 of the APA and the related Disclosure Statement that there were no proceedings pending for which Sellers have received notice that would reasonably be expected to have a material adverse effect on the condition of the Acquired Assets. This representation was false because on August 17, 2018 a lawsuit was filed, and remains pending, in the Southern District of New York alleging violations of the Americans with Disabilities Act, as detailed above.

97. Sellers knew of the pending lawsuit in the Southern District of New York and had retained counsel to defend themselves in that litigation. Sellers knew their representation that there were no pending proceedings was false when made.

98. Sellers intended this representation to mislead Village into entering into the APA, paying the purchase price for the Acquired Assets and preventing Village from taking action to protect its interests.

99. Had Sellers not misled Village, Village and its assignee VSM would have conducted further inquiries into the pending proceeding and taken further action to protect their interests.

100. The above-referenced conduct constitutes fraudulent misrepresentation and Sellers are liable to Village and VSM for the damages caused by the fraudulent statements and actions.

### FIFTH CAUSE OF ACTION
### (TRADEMARK INFRINGEMENT)

101. Plaintiffs reallege each and every allegation set forth in the Paragraphs above as if fully set forth herein.

102. Defendants' use of the Seller Marks violates the License in the APA and is therefore without authorization.

103. Defendants' unauthorized use of the Seller Marks constitutes infringement of the Seller Marks, including without limitation the marks FAIRWAY and LIKE NO OTHER MARKET, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. §1114(1). Defendants' unauthorized use of the Seller Marks is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association between Defendants and Plaintiffs' federally registered marks.

104. Defendants are using the identical Seller Marks in commerce for goods and services identical to Plaintiffs' and through the same trade channels and targeting and/or involving the same consumers and market participants.

105. As a result of Defendants' willful and wrongful conduct, Plaintiffs have suffered and continue to suffer substantial loss. Plaintiffs are therefore entitled to recover damages, together with any and all profits obtained by Defendants as a result of infringement of Plaintiffs' rights.

106. Defendants' willful acts alleged herein have irreparably injured Plaintiffs' business, reputation, and goodwill, and will continue to do so unless and until they are permanently enjoined. Plaintiffs have no adequate remedy at law. Therefore, Plaintiffs are entitled to injunctive relief.

107. As a result of Defendants' intentional and willful misconduct, undertaken by a direct competitor to Plaintiffs and predecessor-in-interest to Seller Marks, resulting in actual confusion and other harms, this action shall be deemed an exceptional case such that Plaintiffs are entitled to recover treble damages and/or profits and attorneys' fees.

### SIXTH CAUSE OF ACTION
### (UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN)

108. Plaintiffs reallege each and every allegation set forth in the Paragraphs above as if fully set forth herein.

109.     Defendants' unauthorized use of the Seller Marks constitutes unfair competition and designation of origin in respect of Plaintiffs' Seller Marks, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a). Defendants' unauthorized use of the Seller Marks is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiffs, or as to the origin, sponsorship, or approval of Defendants' commercial activities.

110.     Defendants' unauthorized use of the Seller Marks is willful.

111.     As a result of Defendants' willful and wrongful conduct, Plaintiffs have suffered and continue to suffer substantial loss. Plaintiffs are therefore entitled to recover damages, together with any and all profits obtained by Defendants as a result of infringement of Plaintiffs' rights.

112.     Defendants' willful acts alleged herein have irreparably injured Plaintiffs' business, reputation, and goodwill, and will continue to do so unless and until they are permanently enjoined. Plaintiffs have no adequate remedy at law. Therefore, Plaintiffs are entitled to injunctive relief.

113.     As a result of Defendants' intentional and willful misconduct, undertaken by a direct competitor to Plaintiffs and predecessor-in-interest to the Seller Marks, resulting in actual confusion and other harms, this action shall be deemed an exceptional case such that Plaintiffs are entitled to recover treble damages and/or profits and attorneys' fees.

## SEVENTH CAUSE OF ACTION
## (COMMON LAW UNFAIR COMPETITION AND TRADEMARK INFRINGEMENT)

114.     Plaintiffs reallege each and every allegation set forth in the Paragraphs above as if fully set forth herein.

115.     Plaintiffs use the Seller Marks in New York, and have acquired all right, title and interest in and to the same pursuant to an assignment by Wakefern. Wakefern, as owner of the

Seller Marks, and Village/VSM as licensees, are the sole authorized users of the mark, except to the limited extent set forth in the APA.

116.    Defendants' use of the Seller Marks violates the License in the APA and is therefore without authorization by Plaintiffs.

117.    Defendants are using the identical Seller Marks in commerce for goods and services identical to Plaintiffs' and through the same trade channels and targeting and/or involving the same consumers and market participants.

118.    Defendants' unauthorized use of the Seller Marks to identify their supermarkets is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association between Defendants and Plaintiffs in violation of Plaintiffs' common law rights within New York.

119.    As a result of Defendants' willful and wrongful conduct, Plaintiffs have suffered and continue to suffer substantial loss. Plaintiffs are therefore entitled to recover damages, together with any and all profits obtained by Defendants as a result of infringement of Plaintiffs' rights.

120.    Defendants' willful acts alleged herein have irreparably injured Plaintiffs' business, reputation, and goodwill, and will continue to do so unless and until they are permanently enjoined. Plaintiffs have no adequate remedy at law. Therefore, Plaintiffs are entitled to injunctive relief.

## EIGHTH CAUSE OF ACTION
## (VIOLATION OF N.Y. GEN. BUS. LAW §349)

121.    Plaintiffs reallege each and every allegation set forth in the Paragraphs above as if fully set forth herein.

122.    Defendants are using without authorization, the Plaintiffs' identical Seller Marks in commerce in connection with services identical to Plaintiffs' and through the same trade channels and targeting and/or involving the same consumers and market participants.

123. Defendants' unauthorized use of the Seller Marks to identify Defendants' supermarkets is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association between Defendants and Plaintiffs in violation of N.Y. Gen. Bus. Law §349, prohibiting deceptive acts and trade practices.

124. Defendants' unauthorized use of the Seller Marks to identify their supermarkets constitutes a materially misleading representation by Defendants as to the source or affiliation of their services. Defendants' deliberate deception of New York consumers constitutes harm to the general public interest.

125. Defendants' willful acts alleged herein have irreparably injured Plaintiffs' business, reputation, and goodwill, as well as the general public interest, and will continue to do so unless and until Defendants are permanently enjoined.

## X.   RELIEF REQUESTED

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants as follows:

(A)    Compensatory damages in an amount to be proven at trial;

(B)    An award of all profits derived by Defendants as a result of their wrongful conduct complained of herein;

(C)    An award of Plaintiffs' costs in bringing this action, including reasonable attorney's fees;

(D)    An award of pre- and post-judgment interest;

(E)    Specific performance to carry out the intent and purpose of the APA; and

(F)    Other and further relief as the Court deems necessary or proper.

Dated: New York, New York
      July 30, 2020

Respectfully submitted,

By: */s/ Paul R. DeFilippo*
       Paul R. DeFilippo

WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050

*Counsel for VSM NY Holdings LLC, VSM
NY Distribution LLC, and Village Super
Market, Inc.*

By: */s/ Brian P. Morgan*
       Brian P. Morgan

FAEGRE DRINKER BIDDLE & REATH LLP
1177 Avenue of the Americas, 41st Fl.
New York, New York 10036
Telephone: (212) 248-3140
Facsimile: (212) 248-3141

*Counsel for Wakefern Food Corp.*